LUIGI WARREN,

        Plaintiff,

vs.

THE CHILDREN'S HOSPITAL
CORPORATION,

        Defendant

Civ. A. No. 17-12472-DLC

## ANSWER AND COUNTERCLAIM

The defendant, The Children's Hospital Corporation ("BCH") answers the Complaint as follows.

### PARTIES AND JURISDICTION

1. BCH admits that the plaintiff, Luigi Warren ("Warren"), resides at 3535 Lebon Drive, Apt. 4311, San Diego, California, 92122 and that he is a citizen of California.

2. BCH admits that it is a Massachusetts corporation whose principal office is located at 300 Longwood Avenue, Boston, Massachusetts, 02115.

3. BCH admits that the amount in controversy, excluding interest and costs, exceeds $75,000.

### FACTS

4. BCH admits that Warren was an inventor of technology ("the Technology") in the course of his employment at the Immune Disease Institute ("IDI"). To the extent the allegation is that Warren was the sole inventor, BCH denies the allegation. BCH is without knowledge or information sufficient to form a belief as to the truth of the allegation concerning the precise dates of Warren's employment with IDI.

5.     BCH admits that IDI licensed the Technology to Moderna Therapeutics in December 2010.

6.     BCH admits that in 2004, IDI's corporate predecessor, the CBR Institute for Biomedical Research, Inc. ("CBRI"), adopted a written policy titled "Research and Technology Development Policy" ("the CBRI Policy") and states that that CBRI Policy speaks for itself. BCH denies Warren's characterizations of the CBRI Policy or its effects in this case.

7.     BCH admits that it merged with IDI in October 2012. Further answering, BCH states that on December 24, 2008, BCH's corporate parent and IDI entered into an Affiliation Agreement in contemplation of a merger between BCH and IDI.

8.     BCH admits that Warren received his first royalty check in 2015.

9.     BCH admits that in August 2017 it informed Warren that IDI had received equity in Moderna pursuant to the license agreement.  Further answering, BCH states that under the license agreement, in addition to other consideration, IDI received a certain number of shares of Moderna common stock subject to the terms of the license agreement. BCH is without knowledge or information sufficient to form a belief about the truth of the allegation that the August 2017 communication was the first time Warren knew that IDI had received equity in Moderna.

10.     BCH admits that it has applied the Children's Hospital Policy on Inventions and Intellectual Property dated April 21, 1992, as amended June 15, 1993 ("the 1992 Children's Hospital Policy") to distributions of royalties from Moderna. Further answering, BCH states that the Children's Hospital Policy, not the CBRI Policy, was the policy applicable to those distributions, and that the 1992 Children's Hospital Policy speaks for itself. Further answering, BCH states that in November 2017, at the request of Warren's co-inventor, Derrick Rossi, BCH

agreed to modify the policy applicable to future distributions to inventors in connection with the

Moderna license. All of the stakeholders, with the exception of Warren, were in agreement on

the change. Under the new policy, which will apply to distributions to Rossi and Warren going

forward, the inventors will receive 27.5% of license revenue received. BCH denies that it has

overridden a written statement by IDI's head of licensing and BCH's General Counsel.

11.     BCH admits that the provisions of the CBRI Policy and the Affiliation

Agreement, among other things, support its assertion that the 1992 Children's Hospital Policy

was the applicable policy.

12.     BCH denies that it "unilaterally and retroactively" cut Warren's share of revenue

or abrogated any promise by IDI.

13.     BCH denies that it has breached any contract with Warren.

14.     The Complaint does not comply with Fed. R. Civ. P. 10(b), and it is therefore

difficult to answer its allegations point-by-point. To the extent the Complaint makes any

allegations that are not expressly admitted in this Answer, BCH denies such allegations.

OTHER DEFENSES

15.     With each distribution that it has sent to Warren, the Hospital also sent

information showing the division of licensing revenue. Warren knew at the time he received the

payments that BCH was applying the 1992 Children's Hospital Policy to the Moderna license.

His claim is barred by the doctrines of waiver, accord and satisfaction, and estoppel.

**COUNTERCLAIM**

BCH asserts the following counterclaim:

JURISDICTION

1.     The counterclaim plaintiff, BCH, is a Massachusetts corporation with its principal

place of business in Massachusetts. The counterclaim defendant, Warren, is a citizen of

3

California. The amount in controversy, exclusive of costs and interest, exceeds $75,000. This Court has jurisdiction under 28 U.S.C. § 1332(a)(1).

## FACTS

2.      Warren was an employee of IDI prior to BCH's merger with IDI in 2010.

3.      In the course of his employment with IDI, Warren was a co-inventor, with Dr. Derrick Rossi, of the Technology, which related to compositions, methods, and kits comprising synthetic, modified RNAs for changing the phenotype of a cell or cells. The work leading to the invention was done in Rossi's lab, where Warren was a postdoctoral researcher.

4.      IDI's corporate predecessor, CBRI, adopted the CBRI Policy in 2004. The adoption of the policy predates Rossi and Warren's invention of the Technology. The CBRI Policy was similar to policies adopted by many hospitals, universities, and research institutions. Such policies provide for the sharing of licensing royalties between the institution, the scientists who contributed to the invention of the licensed technology, and the relevant laboratories.

5.      The CBRI Policy was a policy CBRI adopted in order to further the public good (by encouraging the commercialization of new medical technologies), to encourage its staff's creativity and innovation, to encourage recruitment and retention, to foster scholarly pursuits and principles of academic freedom, to encourage prompt disclosure of new discoveries in order to protect its rights in its intellectual property, and for other similar purposes. The CBRI Policy expressly provided that CBRI had discretion to amend the policy from time to time.

6.      In August 2008, BCH's corporate parent, The Children's Medical Center Corporation ("CMCC"), and IDI (the successor to CBRI) entered into a non-binding Letter of Intent expressing their joint intention to merge. In December 2008, they entered into an Affiliation Agreement, again in contemplation of a merger. The Affiliation Agreement provided

4

that at its option, CMCC could cause IDI to merge with its affiliate, BCH, rather than with CMCC itself.

7.      The effective date of the Affiliation Agreement (defined in the Agreement as the "Effective Time") was February 20, 2009. Among other things, the Affiliation Agreement provided that "All IDI Intellectual Property Rights not previously licensed as of the Effective Time shall at the Effective Time be subject to the policies and procedures established by CMCC with respect to intellectual property of CMCC and/or its affiliates, as the same may be amended from time to time."

8.      As of February 20, 2009, IDI had, therefore, amended its policy and was applying the 1992 Children's Hospital Policy instead.

9.       IDI licensed the technology to Moderna in an Exclusive License Agreement ("License Agreement") dated December 21, 2010. At that time, the 1992 Children's Hospital Policy had applied to IDI for nearly two years. This was consistent with BCH's policy and practice, which was to apply the policy in effect as of the date of the license agreement.

10.     The patent rights licensed in the License Agreement were two provisional patent applications dated April 16, 2010 and September 28, 2010—fourteen and nineteen months, respectively, after the 1992 Children's Hospital Policy was adopted by IDI. (The License Agreement also licensed divisionals, substitutions, and continuations of those provisional applications, patents that issued from them, etc.).

11.     IDI and BCH merged effective October 1, 2012. By then, Warren had left IDI, and he never became a BCH employee.

12.     In or about 2017, Warren began to dispute application of the 1992 Children's Hospital Policy, asserting instead that the CBRI Policy governed the percentage of the royalties

from the Moderna license he should receive. Warren also asserted that the CBRI Policy required the Hospital to sell the Moderna equity it had received as part of the consideration for the license and to distribute a percentage of the proceeds to Warren.

13.     Neither the 1992 Children's Hospital Policy nor the CBRI Policy entitles Warren to receive Moderna stock in kind. Rather, these policies entitle inventors to receive their share of the proceeds of equity once liquidated.

Count One
Declaratory Judgment

14.     An actual controversy exists between BCH and Warren about which policy governs the percentage of royalties from the Moderna license Warren is entitled to receive and about BCH's obligations with respect to the equity it received as part of the consideration for the license.

15.     BCH is entitled to a declaration that the 1992 Children's Hospital Policy and policies later adopted by BCH, not the CBRI Policy, governs Warren's entitlement to a portion of the royalties paid to the BCH under the License Agreement and governs BCH's obligations with respect to the Moderna equity.

DEMAND FOR RELIEF

Therefore, BCH demands judgment declaring that it has not breached a contract with Warren and that the Children's Hospital Policy or policies later adopted by BCH, not the CBRI Policy, governs Warren's entitlement to a portion of the royalties paid to the BCH under the License Agreement and governs BCH's obligations with respect to the Moderna equity. In the alternative, if the CBRI Policy governs, BCH demands judgment declaring that Warren is entitled to a percentage of the proceeds of any sale of Moderna stock but not to distribution of

Moderna shares in kind. BCH also demands its costs and such other relief to which it may be entitled at law or in equity.

Respectfully submitted,

THE CHILDREN'S HOSPITAL
CORPORATION

By its attorneys:

*/s/ Theodore J. Folkman*
Theodore J. Folkman (BBO No. 647642)
Andrea L. MacIver (BBO No. 569280)
MURPHY & KING, P.C.
One Beacon St.
Boston, Mass. 02108
(617) 423-0400
tfolkman@murphyking.com
amaciver@murphyking.com

Dated: February 14, 2018

CERTIFICATE OF SERVICE

I certify that this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to those indicated as non-registered participants on February 14, 2018.

*/s/ Andrea L. MacIver*
Andrea L. MacIver

739341