UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LUIGI WARREN,<br><br>        Plaintiff,<br><br>vs.<br><br>THE CHILDREN'S HOSPITAL CORPORATION,<br><br>        Defendant | Civ. A. No. 17-12472-DLC |

# DECLARATION OF RYAN DIETZ

I, Ryan Dietz, make the following declaration.

1. I am Senior Licensing Manager at Boston Children's Hospital's Technology and Innovation Development Office. I came to BCH from the Immune Disease Institute in 2012 when the two institutions merged. From 2002 to 2012, I was a Technology Transfer Associate and later Director of the Office of Technology Development at IDI. I make this declaration on my own personal knowledge.

2. I understand that this lawsuit involves an invention created by Dr. Luigi Warren and Dr. Derrick Rossi while the two were employed by IDI. I had responsibility at IDI for the licensing of the intellectual property Drs. Warren and Rossi had invented.

3. IDI, like its sister institutions, had a policy that provided for the sharing of licensing revenues with inventors. This policy applied to all inventions created by IDI scientists in the course of their work at IDI, whether or not the work was federally funded or, like the work Drs. Rossi and Warren did, funded from other sources. At the times relevant to this case, IDI's policy was embodied in the Research and Technology Policy dated October 28, 2004. I have

reviewed Exhibit 4 to Dr. Warren's deposition, and it is a true and accurate copy of the IDI policy.

4. Based on my many years of experience in the technology transfer field, I understand that among the reasons institutions such as IDI and BCH adopt such sharing policies is to treat their scientists and researchers fairly and equitably, which improves the relationship between the institutions and the scientists and leads to better retention, and which aligns the economic incentives of the scientists more closely with the mission of the institution, which includes doing basic research that has the aim of making scientific discoveries that others can commercialize for the benefit of the public.

5. I am familiar with the license agreements entered into between IDI and Moderna. I have reviewed Exhibit 8 to Dr. Warren's deposition, which is a true copy of the Amended and Restated Exclusive License Agreement dated March 16, 2012 (with certain figures redacted). The license agreements were negotiated after IDI and BCH had affiliated. Because IDI adopted BCH's intellectual property policies at the time of the affiliation,[1] and because my office at IDI began working closely with BCH's technology transfer at the time of the affiliation, IDI used Children's Hospital form of a license agreement as the basis for the negotiations with Moderna. This is the reason why the license agreement has a BCH copyright notice on the bottom of each page.

6. In 2010, Dr. Warren executed an assignment of his rights to IDI so that IDI could file a provisional patent application concerning the Warren/Rossi invention. IDI, like all peer institutions with which I am familiar, required that all employees agree to execute such assignments of invention made in the course of employment as a condition of employment.

---

[1] There was a minor exception concerning the "GSK Agreement," an unrelated intellectual property agreement that has no relationship with this case.

7. But after Dr. Warren's departure from IDI, when IDI requested that he execute a second assignment, he balked. Dr. Warren and I corresponded on the subject by email. I have reviewed Exhibit 5 to Dr. Warren's deposition, and it is a true copy of our correspondence. As the document shows, my March 9, 2011 email to Dr. Warren cited the IDI Policy. This was incorrect, because as already noted, IDI had adopted Children's Hospital's intellectual property policies at the time of the affiliation of the two institutions. In any event, both IDI's policy and BCH's policy (which became IDI's policy at the time of the affiliation) was that inventors had an obligation to assign inventions, as a condition of their employment.

8. After our correspondence, and after a letter from a lawyer at BCH written on IDI's behalf (Exhibit 6 to Dr. Warren's deposition is a true copy of that letter), which also incorrectly cited the IDI Policy, Dr. Warren did finally execute a second assignment of his rights.

9. After Dr. Warrens departure from IDI, and after the merger between IDI and BCH, Dr. Rossi negotiated with BCH to modify the policy that would apply to revenue sharing for the Moderna transaction. The *ad hoc* negotiated policy was more favorable to Dr. Warren than the Hospital's ordinary policy in two ways. First, it treated him just like Dr. Rossi and provided a 50/50 split of the inventor's share; the Hospital's ordinary policy favored current Hospital employees over former employees. Second, given what all stakeholders understood about the likelihood that the license would yield very significant revenues for the Hospital, the percentage to be shared with inventors (27.5%) was more favorable for Dr. Rossi and Dr. Warren than the Hospital's ordinary policy, which provides for a higher percentage of the first $500,000 in revenue but a lower percentage of any additional revenues. I have reviewed Exhibit 17 to Dr. Warren's deposition, which is a true copy of the ad hoc policy, and Exhibit 18 to my deposition, which is a true copy of the Hospital's ordinary policy.

10. Dr. Warren refused to approve the *ad hoc* policy proposed by Dr. Rossi and agreed to by the Hospital. The Hospital is nevertheless providing him with the benefit of that policy.

11. The Hospital's uniform policy is to use the date of the licensing agreement as the relevant date for determining which version of its revenue sharing policy should apply to a particular invention. Thus if the Hospital amends its policy in the future to reduce the inventors' share of revenues, or to increase it, Dr. Warren and Dr. Rossi will continue to share revenues at the 27.5% rate, in the absence of an agreement of all the parties.

12. In the event an inventor dies during the term of a license, the Hospital's uniform practice is to pay that inventor's share of revenues to his or her estate.

I declare that the foregoing is true and correct. Executed on February 11, 2019.

/s/ Ryan Dietz
Ryan Dietz

## CERTIFICATE OF SERVICE

I, Theodore J. Folkman, hereby certify that, in accordance with Local Rule 5.2(b), the foregoing document was filed through the ECF system on February 15, 2019 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

         /s/ Theodore J. Folkman
         Theodore J. Folkman