# SUMF EXHIBIT 9

## EXHIBIT 18 OF RYAN DIETZ DECEMBER 6, 2018 DEPOSITION



 Children's Hospital Boston

# Children's Hospital Policy on Inventions and Intellectual Property

**AIMS**
The Policy on Inventions and Intellectual Property of Children's Hospital (the "Hospital") is designed to promote the commercial development of the Hospital's research and clinical discoveries in order to benefit the public, to encourage inventorship through financial rewards, and to build the Hospital's research endowment. The Hospital's Office of Technology Transfer shall administer the Policy on behalf of the President and Trustees.

**Ownership and Distribution of intellectual Property**
The Hospital owns all research results and intellectual property, whether tangible or intangible, developed by any person on the premises of the Hospital, or through substantial use of the Hospital's resources or facilities, or that relates to the research conducted by such person for the Hospital, or by a person within the scope of his or her employment by the Hospital. This policy applies to the medical and research staff, employees, and students of the Hospital, as well as to fellows, visiting scientists and volunteers and any other persons who may utilize the Hospital's resources and facilities, regardless of such person's obligations to other institutions. For purposes of clarity, such intellectual property includes, but is not limited to, research notebooks, data, databases, photographs, original drawings and diagrams, computer programs, as well as chemical and biological materials such as proteins, genes, gene products, DNA probes, cell lines and transgenic animals. Such intellectual property shall be removed from the Hospital's premises or transferred to other parties only for non-commercial research purposes and only when the receiving party has executed an authorized Proprietary Information Agreement or Material Transfer Agreement, unless under the terms of a license agreement for commercial development.

This policy shall not be interpreted to inhibit the free communication of ideas and research results through teaching, research collaboration and publication; however, inventors are cautioned to communicate research findings only after the rights to commercialize these findings have been protected through disclosure to the Hospital as defined below. In accord with the tradition of academic institutions, the Hospital, while retaining ownership, transfers to the authors all rights to commercialize publications (textbooks, monographs, etc.) authored by faculty members in pursuit of their academic functions of research and training.

**Disclosure of Inventions to the Hospital**
Each member of the medical or research staff, employee, student or visitor is required to give the Office of Technology Transfer prompt notice of any invention he or she has made by completing the Hospital's Invention Disclosure Form. An invention is a novel, non-obvious and useful idea relating to processes, machines, manufactures and compositions of matter. Examples of inventions are new and improved devices, systems,

circuits, chemical compounds and mixtures, biological materials, new uses of compounds, diagnostics, immunoassays, therapeutics and software programs. An invention has been made when a definite idea of the complete and operative invention is formed in the mind of the inventor.

Every invention based on the Hospital's intellectual property, as defined above, shall be the property of the Hospital. Within a reasonable period of time following disclosure of his or her invention to the Office of Technology Transfer, the Hospital shall advise the inventor in writing whether rights of ownership to the invention will be retained by the Hospital or released to the inventor, or to a third party if so obligated by a contract or grant.

**Seeking Patents or Copyrights to Protect Inventions**
When the Hospital determines to seek the patenting or copyrighting of any invention which the Hospital owns in whole or in part, (a) the Hospital shall, without expense to the inventor, provide such professional services as it shall deem to be necessary or desirable for such purpose, and (b) the inventor shall cooperate fully in such effort, including execution of all necessary or desirable agreements, applications, assignments and other forms and instruments. If at any time the Hospital shall terminate its effort to seek such patent, it shall promptly give notice thereof to the inventor, who thereupon shall be free at his or her own expense to seek the patent, subject to the prior rights the Federal Government or other funding agency may exercise in inventions developed wholly or in part on funds from such agency. With respect to software programs, the Hospital may elect to rely on unregistered copyright or trade secret protection. Computer programs, data bases, and other data should not be distributed publicly without notice of copyright. The Office of Technology Transfer is available for advice on copyright matters.

To protect patent rights within the United States, a patent application must be filed no later than one year after the invention has been disclosed publicly through oral presentation or printed publication. However, when public disclosure precedes the filing of the patent application, rights to file foreign patents will be lost. Ideally, a patent application should be filed prior to the public disclosure of the invention. When a publication is anticipated, an invention disclosure should be submitted to the Office of Technology Transfer as early as possible, preferably at the same time that an initial manuscript is prepared or sooner. The Office of Technology Transfer is available to discuss this issue with the inventor.

**Proceeds for Inventions**
The Hospital shall act to bring to the public all inventions which the Hospital owns in whole or in part, by such means the Hospital deems appropriate in each case. The cumulative net lifetime revenues received by the Hospital for the sale or licensing of the invention shall be distributed as shown in Table 1 as long as inventors remain in the employ of the Hospital and as shown in Table 2 at such time an inventor may leave the employ of the Hospital. Cumulative net lifetime proceeds includes all income received by the Hospital from the sale or licensing of an invention (not including sponsored research

contracts), less all out-of-pocket costs attributable to patenting, litigation, and marketing incurred by the Hospital.

TABLE 1: Distribution of Proceeds while Inventor is in the Employ of Children's Hospital

| Cumulative Net Lifetime Revenues | Inventor | Inventor's Department | Hospital | TIDO |
|---|---|---|---|---|
| up to $100K | 70% | 0% | 20% | 10% |
| $100K-$500K | 45% | 20% | 25% | 10% |
| above $500K | 25% | 25% | 40% | 10% |

TABLE 2: Distribution of Proceeds if an Inventor Leaves the Employ of Children's Hospital

| Cumulative Net Lifetime Revenues | Inventor | Inventor's Department | Hospital | TIDO |
|---|---|---|---|---|
| up to $500K | 35% | 25% | 30% | 10% |
| above $500K | 25% | 25% | 40% | 10% |

Income shall be distributed for the lifetime of the license according to the terms of the Intellectual Property Policy of the Hospital in effect on the effective date of the license agreement, or on the date of signing if no effective date is stated. In the event the Hospital adopts a new policy and all the parties (Inventors, Department, Hospital) agree, then an existing license may be handled under the terms of a new policy.

The determination that an inventor is to be listed on a patent application is governed by patent law and may differ from academic standards of authorship. If there is more than one inventor, the Inventor's share will be distributed equally among the co-inventors, unless the Hospital has been instructed otherwise in writing by all of the co-inventors.

This policy provides that Children's Hospital pays royalties only to its own inventors. However, when a Children's Hospital inventor makes an invention with a co-inventor in another academic or non-profit institution, and the institutions agree to market the invention jointly, the Director of Research Administration may authorize an agreement whereby each institution pays all inventors according to the terms of its own intellectual property policy.

Royalty shares will be distributed twice per year, in July and January based on revenues

from the prior half fiscal year.

The Hospital's share of net license revenues shall be placed in two Funds to support research programs of the Hospital. First, funds from the Hospital's share of annual revenues will be taken "off the top" to establish and maintain a Technology Development Fund, to be managed by the Technology Transfer Office for support of developmental activities that can enhance the marketability of early stage technologies. The Technology Development Fund will be maintained as a revolving fund for expenditures up to $50,000 per year. Following replenishment of the Technology Development Fund, proceeds will be allocated to the General Research Endowment Fund to support Hospital based research and education.

Funds distributed to the Office of Research Administration are intended to finance the Hospital's technology transfer operations, including administrative staff and unreimbursed out-of-pocket expenses.

Notwithstanding the foregoing, all proceeds from any software program that is deemed by the Hospital at any time to be a "work for hire" shall belong to the Hospital and shall not be distributed pursuant to this policy.

**Resolution of Disputes**
Any disputes or problems of interpretation that arise in connection with this policy shall be resolved by the President with the advice of the appropriate Committee of the Board of Trustees.

**Effective Date**
This policy is approved by the Trustees on April 21, 1992 and pertains to all license agreements with effective dates, or signing dates if effective dates are not specified, on or after this date.

Amendment to Intellectual Property Policy approved by Board of Trustees June 15,1993
In some transactions the Hospital may determine that it is appropriate to obtain stock, stock options, warrants or similar financial options("equity" or "stock")in lieu of or in addition to cash in exchange for the transfer of an invention owned by the Hospital. Such transactions shall be governed by the Hospital's Guidelines for Managing Equity Obtained in the Transfer of Hospital Owned Technology ("Guidelines"), as the same may be amended from time to time. Consistent with the Guidelines, the ownership, management and disposition of such equity shall be within the sole discretion of the Hospital. In the event the Hospital decides to sell such equity or to permit an inventor to own directly such equity, the cash proceeds or share of stock, as appropriate, will be distributed to the inventor as follows:

- 25% to the Inventor
- 25% to the Inventor's Department
- 40% to the Hospital

- 10% to the Office of Research Administration

To the extent that cash proceeds of equity are distributed, the amount available for distribution shall be net of out-of-pocket costs attributable to patenting, litigation, marketing, and sale of the stock incurred by the Hospital. To the extent that shares of stock are distributed to an Inventor directly, the Hospital will be entitled to recover a proportionate share of such out-of-pocket costs by either a payment of cash to the Hospital or by retaining a fair percentage of the shares of stock.