# PMOS EXHIBIT 7

## 2011 EMAIL FROM NIXON PEABODY AND THE ATTACHED DRAFT LAWSUIT

luigi.warren@outlook.com

| | |
|---|---|
| From: | Resnick |
| Sent: | Thursday, April 21, 2011 8:02 PM |
| To: | luigiwarren@sprint.blackberry.net |
| Cc: | Ryan Dietz; McCarthy; Dianne; Rubenstein; Gregg |
| Subject: | FW: Assignment of Interest in Certain Stem Cell Research Technology to IDI |
| Attachments: | Complaint.pdf; 033393-067443-US-1 and 033393-067442-PCT Assignment - Warren.pdf; 033393-067441-P Assignment - Warren.pdf; 033393-067443-US Dec and POA.pdf |

┘ ┘│  ┐🗖┐�!

Mr. Warren

My name is David Resnick and I represent your former employer Immune Disease Institute, Inc. ("IDI"). I understand that you are refusing to execute an assignment and power of attorney in favor of IDI concerning certain technology you helped create while employed by IDI. Your refusal to execute the assignment is in direct contravention of your obligations under IDI's Research and Technology Development Policy that binds all IDI employees, the promises you made in the Assignment you executed concerning the technology on August 30, 2010 and Massachusetts law. This situation is no longer tolerable. I therefore urge you to reconsider your position and immediately execute the assignment and power of attorney attached. Should you persist in your refusal to do so, IDI is prepared to file a public lawsuit against you to enforce its rights. A copy of IDI's lawsuit is attached and is ready to be immediately filed. To avoid having to respond to the lawsuit and any publicity attendant to it, execute the attached documents and return them to me. If you are unable to return the documents to me, I will arrange for a delivery service to pick the documents up from you.

I trust you will give this matter your first attention and seriously consider the consequences of not honoring your promises and obligations to IDI.

David S. Resnick
Partner



100 Summer Street
Boston, MA 02110-2131
P (617) 345-6057
F (866) 947-1613
dresnick@nixonpeabody.com
www.nixonpeabody.com

The preceding e-mail message contains information that is confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only to the designated recipient(s) of the message. If you believe that you are not an intended recipient of this message, please notify the sender at (617) 345-6057. Unauthorized use, dissemination, distribution or reproduction of this message by other than the intended recipient is strictly prohibited and may be unlawful.

COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| SUFFOLK, ss | SUPERIOR COURT<br>CIVIL ACTION |

| | |
|---|---|
| IMMUNE DISEASE INSTITUTE, INC.,<br><br>        Plaintiff,<br>v.<br><br>LUIGI WARREN,<br><br>        Defendant. | C.A. NO. _____ |

**COMPLAINT FOR INJUNCTIVE RELIEF,**
**BREACH OF CONTRACT AND DECLARATORY JUDGMENT**

For its Complaint for Injunctive Relief, Breach of Contract and Declaratory Judgment against defendant Luigi Warren, plaintiff Immune Disease Institute, Inc. ("IDI") alleges as follows:

**NATURE OF THE ACTION**

1. This action is brought to enforce IDI's contractual and common law rights to Warren's assignment of his interest in and to inventions he helped create as an IDI employee. Despite being bound by an IDI policy applicable to all employees concerning assignments of intellectual property rights and previously recognizing and honoring his obligations under that policy, Warren now refuses to execute certain assignments necessary for a patent application based on inventions Warren helped create at IDI's direction while an IDI employee. Warren's refusal appears to be based on his desire to extract additional compensation to which he has no right and/or other recognition to which he is not entitled.

2. By this action IDI seeks, among other things, a preliminary and permanent injunction requiring Warren to execute all assignments, declarations, powers of attorney and other paperwork necessary to transfer ownership of inventions he created while an IDI employee for which Warren received financial support from IDI, made significant use of IDI facilities, materials, equipment, staff or other resources or that are related to Warren's employment, research or other activities on IDI's behalf.  IDI also seeks a declaration that Warren is required to provide IDI with all reasonable future assistance necessary to secure any and all intellectual property rights to which IDI is entitled.

## FACTUAL BACKGROUND

I. **THE PARTIES, JURISDICTION AND VENUE.**

    A.    <u>Immune Disease Institute, Inc.</u>

3. IDI is a Massachusetts non-profit corporation with its principal place of business in Boston, Massachusetts.

4. IDI is a Harvard Medical School affiliate allied with Children's Hospital Boston. IDI's mission is fundamental biomedical research to improve human health, harness inflammation and strengthen immune defenses.

    B.    <u>Luigi Warren</u>

5. Upon information and belief, defendant Luigi Warren is a natural person and subject of the United Kingdom.  Warren currently resides in Massachusetts.  During his IDI employment, Warren held the position of Research Fellow.  This Court has general and/or specific personal jurisdiction over Warren as a Massachusetts domiciliary.

    C.    <u>Jurisdiction</u>

    6.    This court has subject matter jurisdiction over this action pursuant to G.L. c. 212, § 4, in that it is an action for injunctive relief and the value of the underlying rights exceed $25,000.

    D.    <u>Venue</u>

    7.    Venue in this court is proper based on IDI's principal place of business in Suffolk County, Massachusetts.

## II. WARREN'S EMPLOYMENT WITH IDI AND AGREEMENT TO BE BOUND BY IDI'S DEVELOPMENT ASSIGNMENT POLICY.

    8.    Warren began his IDI employment on or about November 1, 2007 when he was hired as a Research Fellow.

    9.    IDI hired Warren for the express purposes of conducting research that could be commercially exploited in the field of stem cell treatments.

    10.    As an IDI employee, Warren was subject to certain IDI policies and procedures applicable to all IDI employees.

    11.    One of IDI's generally applicable policies is its Research and Technology Development Policy ("Development Policy"), a true and accurate copy of which is attached as <u>Exhibit A</u>.

    12.    Copies of the Development Policy are freely available to all IDI employees via the IDI intranet.

    13.    It is IDI's standard policy to conduct an HR Orientation with every new IDI employee.

14.     IDI's new hire Orientation includes providing the new employee with a copy of the Development Policy and explaining that acceptance of its terms is a condition of IDI employment.

15.     IDI conducted Warren's HR Orientation on November 19, 2007.  A true and accurate copy of Warren's New Employee/Affiliate Form recording the date of his HR Orientation is attached as Exhibit B.

### III.    IDI'S DEVELOPMENT ASSIGNMENT POLICY.

16.     Generally, IDI's Development Policy addresses the ownership of technology IDI employees create while working for IDI and provides that employees must assign to IDI whatever interests they may have in that technology.

17.     Paragraph C of the Development Policy provides in relevant part that all IDI "full or part-time staff, faculty, employee[s], student[s], trainee[s] or person[s] or entit[ies] otherwise engaged at IDI . . ." are "Covered Persons."

18.     Paragraph C of the Development Policy further provides that any

> Invention that . . . (2) is made, conceived, reduced to practice or generated by a Covered Person while engaged in activities: (a) for which the Covered Person received financial support from or through IDI; (b) during which the Covered Person made significant use of facilities, materials, equipment, staff, information, ideas, data, computers or other resources of IDI; or (c) which are related to the employment, research or other activities conducted at IDI by the Covered Person is referred to as "Technology."

19.     Paragraph D of the Development Policy requires all Covered Persons to promptly submit a report of all Technology inventions to IDI.

20.     Paragraph E of the Development Policy provides in relevant part that "[a]ll Technology is owned by IDI."

21.     The obligation to assign Technology to IDI developed while an IDI employee continues after an individual's IDI employment ends.

## IV. WARREN HELPS CREATE TECHNOLOGY AND EXECUTES FIRST ASSIGNMENT CONSISTENT WITH OBLIGATIONS UNDER DEVELOPMENT POLICY.

22. Consistent with his position as a Research Fellow hired to conduct research that could lead to commercially exploitable inventions, Warren pursued certain stem cell research for IDI.

23. While employed by IDI and working in an IDI lab, Warren helped identify improvements in sustained polypeptide expressions from modified RNAs and uses thereof (the "Stem Cell Research").

24. Consistent with his acceptance of and obligations under the Development Policy, Warren helped prepare a report concerning the Stem Cell Research that was submitted to IDI.

25. On April 16, 2010, IDI filed a provisional patent application based on the Stem Cell Research listing Warren as a co-inventor.

26. Consistent with his acceptance of and obligations under the Development Policy, on August 30, 2010, Warren executed an assignment of the Technology (as defined in the Development Policy) encompassing the Stem Cell Research to IDI and his rights under the provisional patent application ("First Assignment"). A true and accurate copy of the First Assignment is attached as Exhibit C.

27. In the First Assignment Warren specifically acknowledged that his salary and compensation from IDI was "for the making of inventions . . . ."

28. In the First Assignment Warren specifically assigned to IDI, among other things, "all divisions, renewals and continuations" of the provisional application and "all Letters Patent of the United States which may be granted thereon . . . ."

V. **WARREN CO-AUTHORS A SCIENTIFIC PAPER DETAILING THE STEM CELL RESEARCH THAT ACKNOWLEDGES IDI'S FUNDING OF THE RESEARCH.**

29. Coincident with performing the Stem Cell Research, Warren helped co-author a scientific article detailing the findings.

30. The scientific article was published in the November 5, 2010 edition of Cell Stem Cell ("Article").

31. The Article lists Warren as a co-lead author and IDI as having sponsored and paid for the research.

32. The Article further details the Stem Cell Research and technology claimed in the provisional patent application.

VI. **WARREN VOLUNTARILY ENDS HIS IDI EMPLOYMENT.**

33. In June 2010, Warren voluntarily ended his IDI employment.

34. At no time coincident with terminating his employment did Warren ever raise any concerns about the applicability of the Development Policy to him or his continuing obligations under it after his IDI employment ended.

VII. **WARREN REFUSES TO EXECUTE A SUBSEQUENT ASSIGNMENT OF THE STEM CELL TECHNOLOGY IN SUPPORT OF IDI'S PATENT APPLICATION.**

35. In March 2011, IDI began the process of applying for a U.S. patent based on the Stem Cell Research and provisional patent application ("Patent Application").

36. In connection with filing the Patent Application, IDI sent Warren an new assignment and power of attorney to execute. True and accurate copies of the new assignment and power of attorney are attached as Exhibits D and E.

37. Despite multiple requests to Warren that he execute the new assignment and power of attorney, he has to date refused to do so.

## COUNT I
## BREACH OF CONTRACT: Breach of Development Policy

38. IDI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 37 of the Complaint.

39. Warren, like all other IDI employees, agreed to be bound by the terms of the Development Policy as a condition of his IDI employment.

40. The Development Policy requires all IDI employees to assign to IDI all interests they have in technology created while employed by IDI and/or using equipment furnished by IDI.

41. The Patent Application is based on Technology Warren developed while employed by IDI, was funded by IDI and utilized IDI equipment.

42. Warren has no right to additional compensation (beyond that provided for in the Development Policy) for honoring his obligations under the Development Policy.

43. Despite demand, Warren has to date refused to execute the new assignment, power of attorney or cooperate in the prosecution of the Patent Application.

44. Warren's refusal to execute the new assignment and cooperate in the prosecution of the Patent Application are breaches of the Development Agreement.

45. Warren's breaches of the Development Policy have damaged IDI, will continue to damage IDI and are causing IDI immediate and irreparable harm.

46. IDI has no adequate remedy at law.

## COUNT II
## BREACH OF CONTRACT: Breach of Initial Assignment

47. IDI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 46 of the Complaint.

48. Warren executed the Initial Assignment on August 30, 2010.

49. In the Initial Assignment Warren assigned to IDI all right, title and interest he had to continuations of the provisional patent application and all patents that ultimately issued based on the provisional patent application.

50. The Patent Application is based on the Stem Cell Research identified in the provisional patent application and follow-on research performed subsequent to filing the provisional patent application that Warren helped conduct while employed by IDI.

51. Despite demand, Warren has to date refused to execute the new assignment and cooperate in the prosecution of the Patent Application.

52. Warren's refusal to execute the new assignment and power of attorney and cooperate in the prosecution of the Patent Application are breaches of the Initial Assignment.

53. Warren's breaches of the Initial Assignment have damaged IDI, will continue to damage IDI and are causing IDI immediate and irreparable harm.

54. IDI has no adequate remedy at law.

### COUNT III
### BREACH OF IMPLIED-IN-FACT CONTRACT:
### Breach of Duty Under Hired to Invent Doctrine

55. IDI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 54 of the Complaint.

56. Massachusetts common law recognizes that an implied-in-fact contract exists between employers and employees hired for the purpose of inventing goods and/or technology.

57. IDI hired Warren for the purpose of conducting research that would produce technology that IDI could commercially exploit. Accordingly, an implied-in-fact contract between Warren and IDI arose pursuant to the hire-to-invent doctrine.

58. Warren's duties for IDI were to conduct research that could form the basis of technology that IDI could commercially exploit.

- 9 -

59. Warren acknowledged that IDI hired him to invent in the Initial Assignment where Warren stated that he received "salary or payment [from IDI] for the making of inventions . . . ."

60. The Stem Cell Research that Warren helped conduct is the basis for both the provisional patent application that IDI filed and the Patent Application.

61. Having been hired to conduct certain research that in fact resulted in technology that IDI has chosen to commercially exploit, the hired-to-invent doctrine provides that any rights Warren has in the Stem Cell Research are IDI's property.

62. Despite demand, Warren has to date refused to execute the new assignment and cooperate in the prosecution of the Patent Application.

63. Warren's refusal to execute the new assignment and power of attorney and cooperate in the prosecution of the Patent Application are breaches of the implied-in-fact contract created pursuant to the hired-to-invent doctrine.

64. Warren's breaches of his obligations under the implied-in-fact contract created pursuant to the hired-to-invent doctrine have damaged IDI, will continue to damage IDI and are causing IDI immediate and irreparable harm.

65. IDI has no adequate remedy at law.

## COUNT IV
## DECLARATORY RELIEF

66. IDI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 65 of the Complaint.

67. There is an actual and genuine controversy between the parties as to whether Warren's refusal to execute the new assignment and power of attorney and cooperate in the prosecution of the Patent Application is a violation of the Development Policy, Initial

Assignment and/or the implied-in-fact contract created between Warren and IDI pursuant to the hired-to-invent doctrine.

68. IDI requests a declaration from this court that Warren's refusal to execute the new assignment and power of attorney and cooperate in the prosecution of the Patent Application is a violation of the Development Policy, Initial Assignment and/or the implied-in-fact contract created between Warren and IDI pursuant to the hired-to-invent doctrine that must be enjoined.

WHEREFORE, IDI respectfully requests that the Court:

1. Enter a preliminary and permanent injunction requiring Warren to execute all assignments and other forms necessary to transfer Warren's rights, if any, concerning the Stem Cell Research to IDI.

2. Enter a preliminary and permanent injunction requiring Warren to provide all assistance reasonable necessary to prosecute the Patent Application and any subsequent applications based on the Stem Cell Research.

3. Enter judgment in favor of IDI for costs, attorneys' fees and such other relief as the court deems just and appropriate.

IMMUNE DISEASE INSTITUTE, INC.

By its attorneys,

_____
Gregg A. Rubenstein (BBO #639680)
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110
Tel. (617) 345-1000
Fax (617) 345-1300

Date:  April __, 2011