UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LUIGI WARREN,<br><br>       Plaintiff<br><br>vs.<br><br>THE CHILDREN'S HOSPITAL CORPORATION,<br><br>       Defendant | Civ. A. No. 17-12472-DLC |

## [Proposed] PLAINTIFF'S FIRST AMENDED COMPLAINT

### THE PARTIES

1. Plaintiff Luigi Warren (Dr. Warren) is an individual having an address of 202 S. Raymond Avenue, #205, Pasadena, CA 91105.

2. On information and belief, defendant The Children's Hospital Corporation (BCH) is a Massachusetts corporation having a principal place of business at 300 Longwood Avenue, Boston, MA 02115.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 by virtue of diversity of citizenship of the parties and the amount at stake being more than $75,000.

4. Plaintiff is a citizen of the State of California and defendant is a citizen of the Commonwealth of Massachusetts.

5. Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the

events on which this action is based occurred in the District of Massachusetts.

**NATURE OF THE ACTION**

6. There is an actual and genuine controversy between the parties as to defendant's obligation to distribute licensing proceeds to plaintiff in accordance with the employee inventions policy of his former employer, the Immune Disease Institute, Inc. (IDI) of Boston, MA.

7. Plaintiff coinvented intellectual property (IP) on which the license income in issue herein was and continues to be earned. The IDI took control of the IP subject to its "Research and Technology Development Policy" under which revenue was to be shared with plaintiff.

8. The aforementioned IP relates to the uses of synthetic messenger RNA (mRNA).

9. In December 2010 the IDI licensed the IP to Moderna Therapeutics, Inc. (Moderna) for consideration which included, inter alia, an equity stake in the company.

10. On information and belief, the IDI merged with BCH on or about October 1, 2012 and BCH thereby acquired the IP rights assigned by plaintiff to the IDI as well as the Moderna equity and the contract rights that the IDI held as the licensor of that IP.

11. BCH has not honored revenue-sharing obligations that it acquired along with the IP from the IDI with respect to the percentage of net license proceeds due to plaintiff as an employee inventor and the direct distribution of his share of equity "at the earliest opportunity."

12. Plaintiff seeks deficiencies in payments by BCH and interest thereon.

13. Defendant enjoys extraordinary leverage over plaintiff due to its control over the flow of information and the one-way nature of the transaction (plaintiff having already fulfilled his end of the bargain), which impedes the plaintiff's ability to seek redress.

14. Plaintiff's original complaint (ECF 1) sought a declaratory judgment that defendant is obligated to honor the IDI's terms on revenue sharing with the plaintiff and injunctive relief

directing them to do so for as long as license income is received. At the time the original complaint was filed there had been no measurable economic damage to the plaintiff from the defendant's actions. Further, there was still a prospect that voluntary or court-ordered transfer of his share of the Moderna equity could mitigate future economic injury to the plaintiff and reduce the potential for a time-consuming legal controversy over the calculation of damages.

15. BCH liquidated its stake in Moderna in late 2019 and distributed what it decreed to be Dr. Warren's share of the proceeds to the plaintiff in late December. Consequent to these events, plaintiff has incurred economic injury well in excess of the $75,000 threshold for District Court cases. Defendant's actions have also rendered injunctive relief moot as a remedy with respect to the one-time distribution of equity taken as a royalty. This amended complaint therefore adds an express prayer for money damages.

## FACTUAL BACKGROUND

16. Plaintiff was employed by the IDI, a Harvard-affiliated biomedical research institute housed on the Harvard Medical School campus, from November 2007 to June 2010. Plaintiff was a postdoctoral researcher throughout his tenure at the IDI. His employment there was "at will."

17. In early 2009 the IDI announced it was entering into an affiliation with BCH with a view to an eventual merger. BCH was a much larger institution with a broad mission encompassing patient care as well as research and education. The IDI closed its doors and merged into BCH in October 2012. Plaintiff never worked for BCH as an employee or in any other capacity.

18. Plaintiff conceived a novel technique for using synthetic mRNA to "reprogram" cells in the June 2008 and began practical work on the idea almost immediately. After receiving the approval and support of his laboratory head, Dr. Derrick Rossi, plaintiff moved into high gear on the "mRNA reprogramming" project in July 2008.

3

19. Plaintiff succeeded in fully reducing his invention to practice by the end of 2009.

20. Plaintiff collaborated closely with Dr. Rossi and the IDI's Office of Technology Development and outside lawyers to write expansive patent applications based on his invention, leading to the filing of an initial application in April 2010.

21. Warren and Rossi were named as the co-inventors on the initial patent application and all the related, follow-on USPTO filings.

22. Plaintiff gave his notice to the IDI in May 2010 and left the Institute the following month.

23. Plaintiff executed an initial invention assignment in favor of the IDI pertaining to the April 2010 filing in August 2010, about two months after leaving the IDI's employment.

24. Throughout plaintiff's tenure the IDI promulgated to its employees its "Research and Technology Development Policy" specifying their duties in regard to work-related inventions and the revenue-sharing offered to induce them to pursue and see through commercially valuable research at the Institute and assist the IDI in securing associated patent rights.

25. The IDI Policy specifies that the net proceeds received from licensed inventions are to be distributed in three equal shares between (i) the employee inventor(s), (ii) the laboratory in which the inventive work was done and (iii) the IDI General Fund.

26. The policy directs that the Inventor Share of proceeds be divided equally among named inventors, regardless of active employment status, unless a different apportionment is mutually agreed by the affected parties. It also states that the Laboratory Share reverts to the General Fund in the event that the lab becomes inactive by the time revenue is received.

27. Where licensing proceeds take the form of equity (such as stock in a startup company) the IDI Policy directs the Inventor Share be distributed to the inventor(s) "at the earliest opportunity." It directs that the remaining two-thirds of the equity received is to be retained

and managed by the IDI's Investment Committee, with the lab head to be consulted on the timing of the liquidation of the Laboratory Share of this managed equity.

28. Dr. Rossi founded a company called Moderna Therapeutics on the strength of the mRNA work soon after plaintiff left the IDI's employ. Plaintiff learned of this development from reading the Acknowledgements section of a scientific paper he co-authored on the mRNA project (Warren et al., "Highly efficient reprogramming to pluripotency and directed differentiation of human cells with synthetic modified mRNA." Cell Stem Cell, 2010) after it went online in September 2010.

29. The IDI granted an exclusive license to the IP covered by the applications authored by Warren and Rossi to Moderna in December 2010. The consideration in the license deal included an equity stake in the company as well as various cash components. On information and belief, no other IP was licensed to Moderna by the IDI.

30. The IDI never informed Dr. Warren it had taken equity in Moderna and this fact was not disclosed either directly to the plaintiff or in any public forum until 2017. At that time, BCH privately revealed to the plaintiff that equity which might be expected to be worth tens of millions of dollars at an IPO had been taken as partial consideration for the license.

31. In early 2011 the IDI's licensing officer, Ryan Dietz, contacted plaintiff to ask him to execute further assignments in favor of the IDI pertaining to follow-on IP filings. Dr. Warren took the occasion to ensure that he had in writing the full details of his rights as well as obligations in regard to the commercialization of the IP he had developed for the Institute.

32. Plaintiff's information requests prompted a weeks-long series of exchanges in which the IDI initially refused to provide him with a full-text copy of its own employee inventions policy and Dr. Warren, in turn, balked at executing the new assignments.

33. In the course of these 2011 exchanges Dietz assured plaintiff in emails copied to BCH's head of licensing, Dr. Erik Halvorsen, and its Chief Counsel for Research Affairs, Dianne McCarthy, that the Research and Technology Development Policy was the source of his obligation to assign and that it also spelled out the share of licensing revenue he would receive. McCarthy sent plaintiff a demand letter on behalf of the IDI citing the controlling authority of the IDI Policy with regard to his obligations and right to a share of licensing proceeds, enclosing a full copy of the policy. Shortly after that, plaintiff received another demand letter from the IDI's outside counsel at Nixon Peabody, again citing the IDI Policy as the source of his obligation. A draft lawsuit attached to this demand charged plaintiff with Breach of Contract for violating the terms of the Research and Technology Development Policy, explicitly characterizing that policy as a contract between the IDI and its employees.

34. After consulting his attorney, plaintiff agreed to execute the assignments. He has fully cooperated with all subsequent requests to assist in the prosecution of the licensed IP.

35. Plaintiff's first Moderna royalty check was issued by BCH in 2015. The terse statement accompanying the payment implied a different formula was being used to figure his share than given in the IDI Policy. It appeared to be slightly more generous than expected, so there seemed no reason for the plaintiff to worry he would be shorted on Moderna distributions.

36. In summer 2017 Dr. Warren heard from a colleague that Dr. Rossi was winding down his lab at BCH. Concerned this might signal trouble and mindful of press reports that a Moderna IPO was on the horizon, plaintiff reached out to Ryan Dietz, who had transitioned to the role of Senior Licensing Manager at BCH, to check the status of his interest in Moderna revenue.

37. In the exchanges with Dietz which ensued, plaintiff was apprised for the first time of the Moderna equity stake. Dietz also explained that the Hospital had been applying an employee

6

inventions policy of its own to the distributions, which they had justified internally based on language in the non-public 2009 affiliation agreement between the IDI and BCH. Owing to its tiered distribution schedule this policy, it turned out, lowered the Inventor Share to 25%, down from IDI's 33⅓%, for all but the first sliver of the Moderna revenue. Significantly, the BCH Policy did not feature an Inventor's Laboratory share.

38. Dietz now proffered a "Letter Agreement" to the plaintiff for his signature, defining a new "Ad Hoc" split for distributions. According to Dietz, this formula had been conceived to address concerns over the surprise disappearance of the Inventor's Laboratory share, which was set at 7.5% in the Ad Hoc split schedule. The Inventor's Share was set at a flat 27.5%.

39. Plaintiff declined to sign the Letter Agreement as it still represented abrogation of the more generous IDI Policy. Dietz said he would have the Hospital's lawyers reach out to justify its position. Months elapsed with no such follow up in spite of the plaintiff's prompting.

40. Since late 2018 BCH has applied the Ad Hoc split to its distributions of Moderna revenue, including a distribution of equity liquidation proceeds which occurred at the end of 2019.

41. On information and belief, a bitter internal dispute between BCH management and Dr. Rossi over the vanishing lab share precipitated Rossi's move to wind down his lab and—as Dietz's 2017 remarks suggested—this was the true impetus for the Ad Hoc arrangement, regardless of misleading narratives to the contrary in the defendant's court filings in this case.

42. Although Dr. Rossi ultimately signed off on the Letter Agreement, on information and belief he has carried through with his plan to close down his laboratory at BCH, and the equity liquidation distribution statement issued in December 2019 shows that the Rossi Lab Share of net proceeds (which would have been roughly $2M) has now reverted to the institution.

43. On information and belief, the vast bulk of Rossi's personal Moderna-related income flows

from his Founder's Equity in the company. This can only render the matter of the inventors' percentage of license proceeds marginal for Dr. Rossi compared to its import to the plaintiff.

44. The Letter Agreement on the Ad Hoc split is silent on the question of how equity should be handled, but there is an important difference between the provisions of the IDI Research and Technology Development Policy and those of the "default" BCH Policy. The IDI's Policy directs that the inventors' share of the equity be distributed directly to employee inventors "at the earliest opportunity." By contrast, the BCH Policy leaves to the institution's discretion whether the Inventor Share is directly distributed or, alternatively, is retained and managed by the Hospital, as well as the timing of the liquidation of equity if it elects the latter option.

45. Plaintiff filed his original complaint in this case with a prayer for declaratory and injunctive relief on December 19, 2017.

46. Moderna had its IPO on NASDAQ on December 7, 2018, raising approximately $600M at a company valuation of $7.5B.

47. On information and belief, the Moderna stock taken in partial consideration for the licensed IP was illiquid unless by special arrangement up until the expiration of the post-IPO lock-up on June 5, 2019.

48. On information and belief, the "earliest opportunity" that the plaintiff's stock could have been distributed to him unless by special arrangement corresponds to the expiry of lock-up.

49. On information and belief, the plaintiff's share of the Moderna stock under the IDI rules had a market value of over $6.2M at the expiry of lock-up on June 5, 2019.

50. BCH did not distribute Dr. Warren's share of the equity directly to the plaintiff at the expiry of the lock-up but instead took it upon itself to manage and dispose of that stock.

51. On December 23, 2019 BCH issued plaintiff a $3.7M payment which it has stated represents

his share from its total liquidation of the Moderna license equity proceeds.

52. On information and belief, despite statements by defense counsel to the Court in the May 3, 2019 hearing on its motion for summary judgment that "the Hospital is not in the business of speculating on stock" and intended to liquidate its Moderna position "promptly after the expiration of the lock-up date" (ECF 65 at 49-50), BCH actually held onto the stock for several months after it became liquid and ended up selling it for well below its market value at the lock-up expiration.

53. BCH has not so far responded to an inquiry plaintiff sent in December 2019 asking for details of the stock sale including the number of shares, the timing of the sale and the share price.

54. Plaintiff has incurred substantial economic injury—in the millions of dollars based upon calculations made using the information at his disposal—from the defendant's abrogation of promises made to him as an employee inventor within the IDI Research and Technology Development Policy and unilateral imposition of its own rules for revenue sharing. The injury flows both from BCH's reduction of the percentage of proceeds allotted plaintiff and its failure to distribute stock at the earliest opportunity as promised by the IDI.

## CAUSES OF ACTION

### COUNT I
### Declaratory Judgment – Revenue Sharing Policy

55. Paragraphs 1 – 54 are hereby incorporated by reference as if fully set forth herein.

56. The revenue-sharing terms expressly promised plaintiff as an employee inventor in the IDI Research and Technology Development Policy bind BCH as the IDI's successor in interest.

57. Defendant has unilaterally decided to pay plaintiff a smaller percentage of net proceeds from licensing by reducing his inventor's share from half of 33⅓% to half of 27.5%.

58. Defendant's actions have caused damage by virtue of loss of revenue to plaintiff.

59. On information and belief, the royalty obligations of BCH continue into the 2030s and, therefore, plaintiff will continue to be damaged by the loss of revenue.

60. Plaintiff does not have an expectation that defendant will abide by the IDI's terms unless the court declares that the defendant is bound by the express promises within the IDI Policy.

### COUNT II
### Breach of Contract – Inventor's Share of Revenue

61. Paragraphs 1 - 54 are hereby incorporated by reference as if fully set forth herein.

62. Defendant was bound to pay plaintiff in accordance with the IDI Research and Technology Development Policy.

63. By willfully reducing the share of licensing proceeds distributed to plaintiff as an IDI employee inventor relative to that promised in the IDI Policy, defendant has committed a material breach of its obligations to plaintiff.

64. Plaintiff has been damaged financially through payment of a reduced percentage of Moderna license income in the distributions received to date.

### COUNT III
### Breach of Contract – Distribution of Equity

65. Paragraphs 1 - 54 are hereby incorporated by reference as if fully set forth herein.

66. Defendant willfully failed to deliver equity to plaintiff at the earliest opportunity, which in this case would be promptly upon the expiry of the post-IPO lockup, as prescribed by the IDI Research and Technology Development Policy.

67. Defendant instead retained plaintiff's share of the Moderna equity and liquidated it at a time of its own choosing.

68. Defendant's material breach of its obligations has damaged plaintiff financially.

## COUNT IV
## Conversion – Distribution of Equity

69. Paragraphs 1 - 54 are hereby incorporated by reference as if fully set forth herein.

70. The IDI Research and Technology Development Policy directs the Inventor Share of any equity received for a license be distributed to the inventor(s) at the earliest opportunity rather than being retained, managed and disposed of at the discretion of the institution.

71. Defendant exercised ownership over plaintiff's share of the Moderna stock inconsistent with plaintiff's right of possession following the expiry of the post-IPO lock-up.

72. Defendant knowingly and willfully concealed the dates of relevant transactions regarding its sale of Moderna stock.

73. Plaintiff has been damaged by defendant's conversion of his rights.

## PRAYER FOR RELIEF

74. WHEREFORE, Plaintiff requests the following relief:

    A. A declaratory judgment that the defendant is bound with respect to plaintiff by the express promises on revenue-sharing with employee inventors made in the IDI Research and Technology Development Policy;

    B. An order for specific performance of defendant's obligations under the IDI Research and Technology Development Policy;

    C. Damages based on underpayments to plaintiff pursuant to the aforementioned declaratory judgment in accordance with the provisions of M.G.L c. 231A, § 5;

    D. Prejudgment interest on the damages award as directed by M.G.L c. 231, § 6C;

    E. An award to plaintiff of its attorneys' fees and costs; and

    F. Such other and further relief as the Court may deem just and proper.

Respectfully submitted,


   /s/ Luigi Warren
Luigi Warren (Pro Se)
202 S. Raymond Avenue, #205
Pasadena, CA 91105
Tel: (617) 275-1489
luigi.warren@outlook.com

Dated: March 3, 2020

## CERTIFICATE OF SERVICE

      I, Luigi Warren, hereby certify that, in accordance with Local Rule 5.2(b), the foregoing document was filed through the ECF system on March 3, 2020 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                       /s/ Luigi Warren
                                    Luigi Warren (Pro Se)