UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LUIGI WARREN,<br><br>      Plaintiff<br><br>vs.<br><br>THE CHILDREN'S HOSPITAL CORPORATION,<br><br>      Defendant | Civ. A. No. 17-12472-DLC |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

**I. INTRODUCTION**

1. Based on additional facts, circumstances and information arising from defendant's own actions, plaintiff seeks leave to amend his original complaint.

2. Through the proposed First Amended Complaint, plaintiff seeks to streamline this action by amending the complaint to better comport with the current posture of the case.

3. The court should grant plaintiff's motion for leave to amend because plaintiff meets the requirements under Fed. R. Civ. P. 15(a)(2).

**II. PROCEDURAL BACKGROUND**

4. Plaintiff filed his Complaint on December 19, 2017. Defendant responded with an Answer and Counterclaim on February 14, 2018. Discovery was completed by December 6, 2018.

5. Defendant filed a motion for summary judgment on February 15, 2019. The court denied the motion on September 30, 2019. The court's written opinion on the motion is pending.

6. The court has not set a deadline for the filing of motions to amend pleadings.

### III. DEFENDANT'S RECENT ACTIONS

7. The IDI, plaintiff's former employer and defendant's predecessor in interest, agreed to take Moderna startup equity as partial consideration for a license to IP coinvented by plaintiff in December 2010. On information and belief, contractual restrictions rendered this Moderna equity illiquid until a post-IPO "lock-up" expired on June 5, 2019.

8. During the oral arguments hearing on defendant's motion for summary judgment of May 3, 2019, defense counsel told the court that he understood his client's intention was to liquidate its Moderna stake "promptly" at the expiry of the lock-up (ECF 65 at 50).

9. Plaintiff heard nothing more regarding the topic of equity liquidation or any distribution of resulting proceeds until December 20, 2019, at which time he was contacted by BCH's technology licensing office about possible payment methods for a distribution of proceeds from the sale of the Moderna equity.

10. Defendant issued plaintiff a distribution of liquidated equity proceeds on December 23, 2019. A statement explaining how plaintiff's share was figured was emailed to him the following day. It showed BCH used its so-called "Ad Hoc" Moderna royalty split schedule rather than the more inventor-friendly revenue-sharing formula prescribed in the IDI Policy to calculate plaintiff's share of the proceeds.

11. No information on the stock sale other than the total amount of proceeds was proffered. In response to plaintiff's query, the licensing office affirmed that the distribution corresponded to a total liquidation of Moderna equity, but no reply was received to plaintiff's request for details on the timing of the sale, the number of shares involved or the share price.

12. Based on available information, plaintiff has deduced that the equity was sold in late 2019

(most likely in October) for well below its market value at the time of lock-up expiration.

## IV. THE AMENDED COMPLAINT

13. The proposed amended complaint updates the plaintiff's original notice pleading to reflect information developed since 2017 with respect to the Moderna equity, the specific terms of the IP license agreement and the tax treatment of inventor's distributions. It also addresses altered circumstances including defendant's institution of a new "Ad Hoc" percentage split for Moderna royalty sharing, Moderna's IPO and BCH's liquidation of its Moderna stake and distribution of the sale proceeds.

14. The amended complaint incorporates a new cause of action, Conversion (Count IV). The count is based on plaintiff's right to ownership of his share of the Moderna equity at lock-up expiry under the IDI Policy, the defendant's willful interference with the plaintiff's taking possession of stock over plaintiff's objection and the economic harm he suffered as a result.

15. Plaintiff has incurred substantive, cognizable economic injury from defendant's recent actions, including its sale of his share of the Moderna equity at well below the market value it had when he should have received it. At the same time, injunctive relief has been rendered moot as a remedy for defendant's refusal to turn over stock to plaintiff "at the earliest opportunity" as directed by the IDI Policy. The proposed amended complaint therefore incorporates a prayer for money damages and prejudgment interest as well as the declaratory and injunctive relief sought in the original complaint.

## V. LEGAL STANDARD

16. Rule 15 provides that "a party may amend its pleading [with] the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Thus, the court has the discretion to grant or deny a request for leave to file an amended pleading.

See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330, 91 S. Ct. 795, 28 L. Ed. 2d 77 (1971) ("It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court."); see also Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 272 (3d Cir. 2001) ("[A] motion for leave to amend a complaint [is] addressed to the sound discretion of the district court.").

17. "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) (citing Foman v. Davis, 371 U.S. 178, 182 (1962) and Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993)). The court applies Rule 15 to "facilitate [a] decision on the merits, rather than on the pleadings or technicalities." U.S. v. Webb, 655 F.2d 977, 979 (9th Cir. 1981). Furthermore, the court interprets the language for granting amendments under Rule 15 with "extreme liberality." Id.

18. "In the absence of substantial or undue prejudice, denial [of a motion to amend] must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of V.I., Inc., 663 F.2d 419, 425 (3d Cir. 1981) (citing Foman, 371 U.S. at 182). Given the liberal standard under Rule 15(a), "the burden is on the party opposing the amendment to show prejudice, bad faith, undue delay, or futility." Chancellor v. Pottsgrove Sch. Dist., 501 F. Supp. 2d 695, 700 (E.D. Pa. 2007).

19. When deciding whether to grant leave to amend, a court must consider: (1) whether the amendment was filed with undue delay; (2) whether the movant has requested the amendment in bad faith or as a dilatory tactic; (3) whether movant was allowed to make previous amendments which failed to correct deficiencies of the complaint; (4) whether the

amendment will unduly prejudice the opposing party and; (5) whether the amendment is futile. See Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (citing Foman v. Davis, 371 US 178, 182 (1962)).

20. The five factors are not considered equally. Prejudice is the most important factor and is given the most weight. Eminence, 316 F.3d at 1052. Therefore, "[a]bsent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." Id. See also Talwar v. Creative Labs, Inc., No. CV 05-3375, 2007 WL 1723609 (C.D. Cal. June 14, 2006) (finding the plaintiffs should be granted leave to amend because additional discovery would not unduly prejudice the defendant and the defendant did not make a strong enough showing of bad faith on the part of the plaintiffs or that the plaintiffs requested leave to amend as a dilatory tactic, despite the suspect timing of the filing).

21. The Ninth Circuit has also held that one of the five Foman factors alone is not sufficient to justify the denial of a request for leave to amend. The Ninth Circuit has found that undue delay alone "is insufficient to justify denying a motion to amend" and has "reversed the denial of a motion for leave to amend where the district court did not provide a contemporaneous specific finding of prejudice to the opposing party, bad faith by the moving party, or futility of the amendment." Bowles v. Reade, 198 F.3d 752, 758 (9th Cir. 1999).

22. Courts give special consideration to pro se litigants requesting leave to amend a complaint. "Courts are particularly reluctant to deny leave to amend to pro se litigants." Flowers v. First Hawaiian Bank, 295 F.3d 966, 976 (9th Cir. 2002). In particular, "[u]nless it is absolutely clear that no amendment can cure the defect … a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." Lucas

v. Dept. of Corrections, 66 F.3d 245, 248 (9th Cir. 1995).

## VI. ARGUMENT

### A. <u>Plaintiff is not filing the amendment with undue delay</u>

23. Plaintiff first had knowledge of economic injury arising from BCH's liquidation of his share of Moderna equity in contravention of the IDI Policy upon his receipt of the distribution of equity sale proceeds and the associated payment advice in late December 2019. This action of defendant precipitated plaintiff's need to seek money damages. The motion to amend is being filed as soon as reasonably possible after the plaintiff learned of defendant's actions.

24. Before the December 2019 distribution, plaintiff could only speculate on the true position regarding key points bearing on the existence and nature of injury owing to defendant's handling of Moderna equity, the utility of filing an amended complaint or what particular amendments would be appropriate in such a filing. To wit, plaintiff did not know:

    a. whether the Moderna stake had been wholly or partially liquidated or remained fully unliquidated;

    b. assuming there had been a sale of equity, of how many shares and at what price;

    c. the timing of any equity sale and, consequently, whether there had been a prompt liquidation on lock-up expiry or speculation regarding stock price movements;

    d. if shares were sold, whether the share price was higher or lower than the price at the time he should have received stock under the IDI Policy;

    e. if the total value of what defendant deemed to be plaintiff's share of the equity was less than or greater than the value of the stock which he would have received under the IDI Policy at the time he should have received it under that policy.

25. Furthermore, prior to late December 2019, there remained the possibility that defendant

would still agree to pay plaintiff the inventor's share promised by the IDI or, failing that, would at least hold off disposing of the contested slice of the equity proceeds, given:

   a. the fact defendant had signaled willingness to abide by the court's ultimate finding on whether the IDI inventor percentage was binding (ECF 32 at 8);

   b. the court's denial of defendant's motion for summary judgment on September 30;

   c. as plaintiff knew, the allotted "Rossi Lab" share—bigger in percentage terms than the disputed fraction of revenue—might well prove moot due to Dr. Rossi closing down his lab at BCH (as turned out to be the case).

26. Prior to the December 2019 distribution, the only clue plaintiff had to help answer these questions came from imprecise, hedged and (as it turned out) misleading assurances to the court made by defense counsel in the hearing of May 3, 2019, to the effect that defendant planned to "promptly" liquidate its Moderna stake upon the expiration of the post-IPO lock-up as "the Hospital is not in the business of speculating on stock" (ECF 65 at 49-50).

27. The December 24 payment statement and additional information gleaned from other sources in January 2020 afforded plaintiff for the first time a set of facts sufficient to establish that he had incurred substantial financial injury due to defendant's actions contravening the IDI Policy. This harm was the combined result of defendant's unilateral reduction to plaintiff's revenue-sharing "cut" and its conversion of plaintiff's property rights in Moderna stock.

28. The timing of the motion to amend has been dictated by the pace of events and by the defendant's practice of limited disclosure. Short of submitting a series of revised complaints to the court featuring a succession of incremental and potentially speculatively grounded amendments, it is difficult to imagine how plaintiff could have responded to the events that have unfolded with greater alacrity.

### B. **Plaintiff does not request leave to amend in bad faith or for dilatory reasons**

29. Plaintiff's elaboration of the causes of action and addition of a prayer for money damages in the proposed amended complaint respond straightforwardly to information and circumstances arising from defendant's recent actions, which in turn flow from its abrogation of the IDI's express promises to employee-inventors. Plaintiff naturally seeks an expeditious resolution of his claim against the defendant, which has been pending over two years, and is highly averse to prolonging the litigation unnecessarily.

30. Now that a court ordered transfer of stock is moot as a form of relief, plaintiff has a strong interest in securing money damages within the framework of the instant case, which is the major aim of the amendments. Rather than being dilatory, the amended complaint should promote judicial economy, as there would be a strong possibility that a new case relitigating the same ground would be needed to put to rest the issues raised by the original complaint were the court limited to its prayer for declaratory and injunctive relief. Requiring plaintiff to file a second lawsuit instead of an amended complaint would be a waste of court resources as all the relevant issues have already been identified in the context of the current action.

### C. **Plaintiff has not previously filed deficient amendments**

31. This is the first proposed amended complaint in this case, so the question of previously filing deficient amendments does not arise.

### D. **Plaintiff's amendment will not unduly prejudice defendant**

32. This is not a case in which allowing leave to file an amended complaint would require re-opening discovery or postponing other scheduled events. Contrast Somascan, Inc. v. Philips Sys. Nederland, B.V., 714 F.3d 62, 64-65 (1st Cir. 2013) (per curiam) (denial of leave to

amend complaint appropriate when motion was filed after discovery was complete and defendant had filed a motion for summary judgment).

33. The new count of Conversion in the amended complaint is based on deliberate, unforced actions taken by defendant on its own initiative. Defendant sold plaintiff's share of equity at a time of its own choosing and then distributed proceeds to plaintiff rather than delivering the equity itself "at the earliest opportunity" as directed by the IDI Policy.

34. The proposed amended complaint is presented substantially immediately after plaintiff became aware of new facts concerning the sale of the Moderna equity of which defendant had first-hand knowledge but did not inform plaintiff. Indeed, whether from lack of care or otherwise, defense counsel's representations to the court in the hearing of May 3, 2019 proved contrary to the defendant's actual actions with respect to the sale of equity and had the effect of misleading the plaintiff.

35. No new discovery should be required by defendant because the changed circumstances relate to its own actions and to the form and amount of plaintiff's damages. The money relief requested in the proposed amended complaint is equivalent to the result of obtaining the equitable relief originally requested. The basis for plaintiff's right to relief has not changed.

36. Plaintiff will not object if defendant wishes to make a jury demand in light of the prayer for damages included in the proposed amended complaint.

### E. **Plaintiff's amendment is not futile**

37. In this context, "[f]utility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996); see also Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 421 (6th Cir. 2000) ("a proposed amendment is futile only if it could not withstand a 12(b)(6) motion to

9

dismiss"). Plaintiff's amendment is not futile because the amended complaint states facts on which relief can be granted. Defendant never questioned that the original complaint satisfied Fed. R. Civ. P. Rule 12(b)(6) by filing a Motion to Dismiss. The court's denial of defendant's comprehensively argued and documented motion for summary judgment underscores the justiciability of the prima facie case presented in the plaintiff's 2017 pleading. The new facts and circumstances which the amendments address flow directly from the dispute regarding defendant's obligations to plaintiff that is the gravamen of the original complaint. The proposed amendments focus primarily on the fact that the relevant remedies have changed due to the recent actions of the defendant with respect to the Moderna equity.

## VII. CONCLUSION

38. Based on the facts, legal standard and arguments presented above, plaintiff's motion should be granted by this court.

Respectfully submitted,

   /s/ Luigi Warren
Luigi Warren (Pro Se)
202 S. Raymond Avenue, #205
Pasadena, CA 91105
Tel: (617) 275-1489
luigi.warren@outlook.com

Dated: March 3, 2020

## **CERTIFICATE OF SERVICE**

  I, Luigi Warren, hereby certify that, in accordance with Local Rule 5.2(b), the foregoing document was filed through the ECF system on March 3, 2020 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                <u> /s/ Luigi Warren </u>
                Luigi Warren (Pro Se)