UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LUIGI WARREN,<br><br>              Plaintiff,<br><br>vs.<br><br>THE CHILDREN'S HOSPITAL CORP.,<br><br>              Defendant | Civ. A. No. 17-12472-DLC |

## DECLARATION OF IRENE ABRAMS

I, Irene Abrams, make the following declaration:

1. I am the Vice President of Technology Development and New Ventures at Boston Children's Hospital ("the Hospital"). I lead the Technology & Innovation Development Office ("TIDO") within the Hospital. TIDO is responsible for commercializing discoveries and innovations developed by research and clinicians at the Hospital.

2. Prior to joining the Hospital, I was an executive director at Partners Healthcare Innovation, where I was responsible for commercializing technology from Massachusetts General Hospital. Before joining Partners, I was the Associate Provost for Innovation at Brandeis University and a Senior Technology Licensing Officer at the Massachusetts Institute of Technology, where I focused on licensing biotech inventions for MIT, the Whitehead Institute, and the Broad Institute. I am past president of the Massachusetts Association of Technology Transfer Offices, the founder of T3, an organization for technology licensing offices from small New England research institutions, and former vice president of the Association of University Technology Managers. In summary, I have been in the technology licensing field since 1989 and have extensive experience in the field.

3. I have been asked to explain the reasons why the Hospital's licensing practices, and in particular the details of agreements the Hospital has made with licensees to take equity as part of the consideration for IP licenses, are commercially sensitive, and why it would be harmful to the Hospital if they were publicly disclosed.

4. The Hospital, like its peer institutions, devotes extraordinary amounts of time, money, and talent to basic research. When our scientists make important discoveries, TIDO's role is to license their inventions to entities that are in a position to commercialize them, so that the inventions can benefit the public.

5. The revenue the Hospital obtains in consideration of these licenses is important to the overall ability of the Hospital to provide outstanding care to our patients and to the Hospital's ability to lead in basic research. Thus, while the Hospital is not a commercial enterprise, TIDO tries to make agreements with licensees that are favorable for the Hospital.

6. In general, the Hospital does not make the financial details of these licensing agreements public. Publicizing the details would allow licensees to cite earlier agreements as precedents in their negotiations with the Hospital. If the Hospital faces the risk that its agreements may become public, the Hospital will be less able to negotiate deals that account for the particular circumstances of a particular licensee. This would harm the Hospital and the broader biotechnology community.

7. The passage of time does not lessen this harm appreciably. Of course, biotechnology is a fast-moving field. But the basics of technology licensing are not dramatically different now than they were a decade ago. That fact, combined with what I understand to be the irrelevance of the details of the equity stake the Hospital took in Moderna, lead me to conclude that whatever benefit the public would have from knowing the number of shares of Moderna

stock the Hospital received is far outweighed by the Hospital's competitive interest in the confidentiality of its licensing terms.

      I declare under penalty of perjury that the foregoing is true and correct. Executed on May 12, 2020.

                                              */s/ Irene Abrams*
                                              Irene Abrams