UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LUIGI WARREN,<br><br>        Plaintiff,<br><br>vs.<br><br>THE CHILDREN'S HOSPITAL CORP.,<br><br>        Defendant | Civ. A. No. 17-12472-DLC |

### DECLARATION OF IRENE ABRAMS

I, Irene Abrams, make the following declaration.

1.      I am the Vice President of Technology Development and New Ventures at Boston Children's Hospital ("the Hospital"). I lead the Technology & Innovation Development Office ("TIDO") within the Hospital. TIDO is responsible for commercializing discoveries and innovations developed by research and clinicians at the Hospital.

2.      Prior to joining the Hospital, I was an executive director at Partners Healthcare Innovation, where I was responsible for commercializing technology from Massachusetts General Hospital. Before joining Partners, I was the Associate Provost for Innovation at Brandeis University and a Senior Technology Licensing Officer at the Massachusetts Institute of Technology, where I focused on licensing biotech inventions for MIT, the Whitehead Institute, and the Broad Institute. I am past president of the Massachusetts Association of Technology Transfer Offices, the founder of T3, an organization for technology licensing offices from small New England research institutions, and former vice president of the Association of University Technology Managers. In summary, I have been in the technology licensing field since 1989 and have extensive experience in the field.

1

3. Attached to this Declaration as Exhibit 1 is a spreadsheet showing the dates of the Hospital's sales of the stock of Moderna, Inc. that it and its predecessor in interest, IDI, had received in consideration of licensing to Moderna an invention created by Dr. Derrick Rossi and Dr. Luigi Warren, and the price per share for each sale. The sales began on July 8, 2019 and continued on a near-daily basis until September 23, 2019. The Hospital sold its shares in lots of an equal number of shares per day, except that on the final day it sold the remaining shares.

4. The Hospital sold its shares over a period of time rather than on a single day for two reasons. First, when selling a large number of shares, the Hospital seeks to avoid "flooding the market" and decreasing the share price by materially increasing the supply of shares available for purchase. It is the Hospital's practice, and in my experience based on many years in the technology transfer field, industry best practice, to sell shares over time to avoid affecting the share price.

5. The second reason the Hospital did not sell all its Moderna shares at once is that it is not in the business of trying to time the market or to speculate on the price of stocks. We seek to "smooth out" any day-to-day price changes rather than to try to pick the best day on which to sell blocks of stock. This is the practice at the Hospital and at prior institutions (though there may have been occasional exceptions), and in my experience based on my years in the field, it is the accepted industry best practice.

6. The reference in the "Description" column of Exhibit 1 to a "preferential rate" is to the preferential rate the Hospital's stockbroker charged it for the transactions. I have no knowledge about how the preferential rate the Hospital paid would compare to the rates Dr. Warren or any other person would pay their own brokers.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May May 18, 2020.

*/s/ Irene Abrams*

Irene Abrams