what percentage to award him. *Id.* at *48- 53. But the Hospital's misstatement about which policy governed came after Dr. Warren had done all his inventive work, and indeed, after every relevant event in the case except Dr. Warren's execution of the second assignment. And as the judge concluded and Dr. Warren has conceded by not challenging the conclusion on appeal, Dr. Warren had a preexisting duty to sign that assignment and could not make a claim that he reasonably relied on the Hospital's misstatement.

In short, even if *Charest* were correctly decided (the case was dismissed by stipulation after the decision on the motion to dismiss and never tested on appeal), it is far removed from this case and has limited value.

### D. If There Is A Remand, The Court Should Vacate The Decision on the Motion to Amend With Instructions To Consider The Arguments The Hospital Made Against Amendment.

For all the reasons already argued, the Court should bring this case to an end by affirming the summary judgment for the Hospital. If there is a remand, though, the Court should not simply reverse the decision to deny the motion for leave to amend the Complaint. The judge held that the proposed amended complaint was futile because even his new claims depended on showing that the IDI Policy applied (A. 508-09); he did not engage with the

Hospital's other arguments against amendment. Because a motion for leave to amend is committed to the judge's discretion, the Hospital does not ask this Court to remand with instructions to deny the motion. But the arguments against amendment that the judge did not consider were strong, and the judge should consider them in deciding whether to allow Dr. Warren's amendment.

Dr. Warren's new theory is that he was injured because the Moderna stock was worth less on the dates that the Hospital actually did sell the stock than on the dates that he claims the Hospital should have sold (A. 453), or that he was injured by the Hospital's refusal to convey stock to him on a date that he claims the Hospital should have conveyed them (A. 454). The Hospital argued (ECF 87 at 12-14) that the new claims would be prejudicial because they would require more discovery on issues the parties had never explored, including by way of example Dr. Warren's finances, tax situation, and investment history. The new claims would likely also require expert testimony on the tax and timing issues.

Amendments that require new discovery, after a case has passed through summary judgment and is ready for trial, are the archetypical form of prejudice that courts note when denying motions to amend. In *Acosta-Mestre v. Hilton International of Puerto*

*Rico, Inc.,* 156 F.3d 49, 51-53 (1st Cir. 1998), for example, the motion to amend came "near the close of discovery"—not, as here, long after discovery ended. By the time the plaintiff filed its motion, "nearly all of the case's pre-trial work was complete." Here, all the pretrial work except the pretrial conference and motions in limine is complete.

Moreover, the proposed amendment in *Acosta-Mestre* would have led the defendant to a "likely major alteration in trial strategy and tactics." The same is true here. Without the amendment, the Hospital would want to emphasize the difficulties in transferring pre-IPO shares to Warren at or near the time the shares were received. Indeed, the Hospital took no steps to explain how restricted shares could have been transferred pre-IPO, and instead emphasized that Dr. Warren had developed no evidence to show that they could have been transferred. (A. 112-13). But with the amendment, the Hospital might, depending on the opinions of experts not yet retained, want to emphasize the possibility of making the transfer, to minimize the possible measure of damages. In *Acosta-Mestre,* these factors justified denying the motion for leave to amend, and the same conclusion applies here a fortiori.

Along with prejudice, the Hospital also argued that the proposed new claims were futile. (ECF 87 at 6-11). The Hospital's

main argument on futility was that the damages claim was hopelessly speculative because Moderna's stock price is volatile and because it is impossible to predict the stock's performance to time a sale to maximize profit. Dr. Warren's claim for lost profits depends on what he would have done had he received the stock, and courts reject such claims based on the amount of speculation involved. *See Vanderbeek v. Vernon Corp.,* 50 P.3d 866, 874 (Colo. 2002); *LG Capital Funding, LLC b. 5barz Int'l,* 307 F. Supp. 3d 84, 103 n.14 (E.D.N.Y. 2018); *Kane v. Shearson Lehman Hutton, Inc.,* 916 F.2d 643, 647 (11th Cir. 1990). Dr. Warren's claim for conversion is futile for another reason: the Hospital was rightfully in possession of the Moderna stock certificates when it received them, and therefore, no claim for conversion lies. *See Abington Nat'l Bank v. Ashwood Homes, Inc.,* 19 Mass. App. Ct. 503, 507, 475 N.E.2d 1230, 1232-33 (1985). Dr. Warren never owned the Moderna stock; his claim is that the Hospital breached a supposed promise to deliver the Hospital's stock to him, not that the Hospital wrongfully possessed Dr. Warren's own shares.

Finally, the Hospital argued (ECF 87 at 5-6) that because the amendment related to matters that occurred after the filing of the complaint, it would be procedurally improper. To raise such

matters, Dr. Warren should have moved for leave to file a supplemental pleading under Fed. R. Civ. P. 15(d). *See generally Cortés-Ramos v. Martin-Moralis,* 2020 U.S. App. LEXIS 11545, at *13 (1st Cir. Apr. 13, 2020); 3 *Moore's Federal Practice* § 15.30[1]. If Dr. Warren were to make such a motion, the Hospital would oppose it on the grounds that the case is ready for trial and the Court should not allow further delays by introducing new claims arising out of facts occurring long after the start of the action and requiring additional discovery.

## CONCLUSION

For these reasons, the Court should affirm the judgment.

Respectfully submitted,
THE CHILDREN'S
HOSPITAL CORPORATION

By its attorney:

*/s/ Theodore J. Folkman*

Theodore J. Folkman (No. 81828)
RUBIN AND RUDMAN LLP
53 State St.
Boston, Mass. 02109
(617) 330-7000
tfolkman@rubinrudman.com