conduct.[2] On that basis, Dr. Warren can hardly be blamed for "watching his back" during the second assignment imbroglio of 2011.

## II. OUTSTANDING ISSUES TO BE ADDRESSED ON REMAND

The district court's dismissal of Dr. Warren's motion to file a first amended complaint is predicated on the court's finding that the IDI Policy's incentive terms were silently retired. Opening Br., 43-45, Addendum 23-24. On that basis, the dismissal should be vacated if the Court rules that the finding is erroneous. Children's raises additional issues with Dr. Warren's motion which were not addressed by the district court's decision. Response Br., 36-40. Litigation of these issues on remand could add significant time, complexity, and cost to the resolution of the case. Given this relatively uncomplicated matter has been at the pre-trial stage for over five years and the Court has discretion to guide or direct the lower court as to the outstanding issues, Dr. Warren now takes up these questions.

Children's proposes that if the case is remanded, instead of reversing the court's dismissal of Dr. Warren's motion to amend, the Court should vacate and remand for further consideration of its arguments in opposition to the motion to amend. It alleges

---

[2] Arundhati Parmar, *Exclusive: Erik Halvorsen out at TMC Innovation Institute. Reports are that he was fired*, MedCity News, December 18, 2018.

URL: https://medcitynews.com/2018/12/exclusive-erik-halvorsen-out-at-tmc-innovation-institute-reports-are-that-he-was-fired/

that: (a) Dr. Warren's new conversion claim is futile because the Hospital was in rightful possession of the Moderna shares; (b) his prayer for damages is futile because it is impossible to predict stock prices so any computation involving lost profits is hopelessly speculative; (c) allowing the amended complaint would be prejudicial because it would require the Hospital to reassess its trial tactics and explore new legal theories to minimize its liability, potentially necessitating the reopening of discovery; and (d) the motion for amendment is procedurally improper as it relates to events that occurred after the filing of Dr. Warren's complaint.

In response, Dr. Warren asserts that these arguments are each fallacious and without merit and represent a continuation of Children's longstanding practice of stalling and pragmatically shifting position (the IDI Policy applies, it doesn't apply—it is a contract, it is not a contract—equity could not be distributed early, it could be distributed early) to avoid honoring promises IDI made to its employee inventors before merging into the Hospital.

**1. If Children's was in rightful possession of Dr. Warren's Moderna shares that fact would not render his conversion claim futile.**

The Hospital's argument that the new conversion claim is futile (Response Br., 39) is a deflection because it requires evaluation of the claim on its merits. This is not the standard for determining futility. An amendment is only futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods*

*Co.*, 785 F.2d 503, 510 (4th Cir. 1986) (citations omitted). Children's asserts that conversion claim must fail as the Hospital was in rightful possession of the Moderna stock, citing *Abington Nat'l Bank v. Ashwood Homes, Inc.*, 19 Mass. App. Ct. 503, 507, 475 N.E.2d 1230, 1232-33 (1985). Yet the *Abington* opinion affirms that "[o]ne who intentionally or wrongfully exercises acts of ownership, control or dominion over personal property to which he has no right of possession at the time is liable for the tort of conversion," and acknowledges that possession which is not wrongful can become a conversion upon a demand and refusal to relinquish to another party. *Abington* at 506-07, 475 N.E.2d 1232-33.

Dr. Warren's suit for declaratory and injunctive relief of December 2017 (ECF 1) constituted a standing demand for the transfer of his share of Moderna equity to his ownership and control at the earliest opportunity based on his superior claim of right under the IDI Policy. In turn, the "Demand for Relief" in Children's Hospital's "Answer and Counterclaim" of February 14, 2018 constitutes its refusal to honor the IDI's promise to distribute stock to inventors: "In the alternative, if the CBRI [IDI] Policy governs, BCH demands judgment declaring that Warren is entitled to a percentage of the proceeds of any sale of Moderna stock but not to distribution of Moderna shares in kind." ECF 17 at 6.

While the tort of conversion was once limited to tangible property, its scope has become broader as the law has evolved. Stock and funds deposited in an investment

account are subject to conversion under Massachusetts law. *George v. Coolidge Bank and Trust Co.*, 360 Mass. 635, 641, 277 N.E.2d 278, 283 (1971). *Cahaly v. Benistar*, 68 Mass. App. Ct. 668, 670, 679-80, 864 N.E.2d 548, 552-53, 559 (2007). The Massachusetts District Court recently upheld claims of conversion and replevin on digital copies of deleted files once encoded on a laptop's hard drive. *Children's Hosp. Corp. v. Cakir*, 2017 U.S. Dist. LEXIS 147123 (D. Mass. Sep. 12, 2017) at *7-17.

Dr. Warren's claim of conversion meets the four-point test for the tort which applies in Massachusetts:[3]

> A plaintiff asserting a conversion claim under Massachusetts law must show that: (1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused.

*Evergreen v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 95 (1st Cir. 1993) (citations omitted).

---

[3] See also *Conversion* (publication date December 12, 2022) on the Massachusetts Superior Court Model Jury Instructions web page.

Website URL: https://www.mass.gov/guides/superior-court-model-jury-instructions

Document URL: https://www.mass.gov/doc/superior-court-model-civil-jury-instructions-conversion-pdf/download

There is no genuine issue of material fact as to the existence of a conversion if the IDI Policy's terms obligate the Hospital. Thus, there is a strong prima facie case for the Hospital's conversion of Dr. Warren's stock at the time Children's refused his demand in its "Answer and Counterclaim" or as soon as any relevant statutory or contractual impediments to its transfer lapsed thereafter.

**2. Children's should not be permitted to drag out or derail a just resolution of this case by overcomplicating the issue of measuring damages.**

On the face of the matter, Dr. Warren's prayer for damages in his proposed first amended complaint was plainly appropriate and not futile as Children's recent actions had caused actual economic injury to Dr. Warren for the first time, flowing from the disavowal of the IDI Policy's superior inventor share when distributing the equity proceeds. With respect to the component of the economic injury which flowed from the Hospital's refusal to distribute stock and insistence on controlling the liquidation of Dr. Warren's shares, the prayer for damages does not rely on some excessively speculative theory concerning his ability to time the market and maximize his profits. This premise is false and does not appear in Dr. Warren's prayer for relief.

To the contrary, the damages estimate entailed under Dr. Warren's amended complaint is reasonable, grounded in objective criteria (the expiration of lock-up restrictions and the price of the stock at that time), and comports with Massachusetts' standard rule for computing contract damages for non-delivery of stock based on its

value at the time of breach or failure to deliver. *George v. Coolidge Bank and Trust Co.*, 360 Mass. 635, 641, 277 N.E.2d 278, 283 (1971).[4] It eschews any of the variations courts have at times crafted in an attempt to compensate injured parties for denied opportunities to profit on undelivered or converted stock—and is therefore if anything too generous to the breaching party.

In further considering the question of damages for the non-delivery of stock in this case, it will be helpful to have the stock price of Moderna at certain key dates to hand (**Table 1**). This historical data is readily available on the NASDAQ website.[5]

| Date | Event | Opening Price |
|---|---|---|
| 12/07/2018 | Initial Public Offering | $22.00 |
| 06/05/2019 | Expiration of Lock-up | $19.20 |
| 12/23/2019 | Phased Liquidation Payout to Dr. Warren | $19.79 |
| 08/10/2021 | Historical Peak to Date | $485.50 |
| 07/19/2023 | Time of Writing | $123.49 |

**Table 1: Moderna NASDAQ Share Prices**

---

[4] See also "Failure to Deliver Stock" at p. 9 of *Contract Damages and Other Special Contract Issues* (publication date August 9, 2021) on the Massachusetts Superior Court Model Jury Instructions web page.

Website URL: https://www.mass.gov/guides/superior-court-model-jury-instructions
Document URL: https://www.mass.gov/doc/superior-court-model-civil-jury-instructions-contract-damages-and-other-special-contract-issues-pdf/download

[5] URL: https://www.nasdaq.com/market-activity/stocks/mrna/historical

In Massachusetts the standard measure of damages for a conversion of stock or breach of contract to deliver stock is the fair market value at the time of conversion or failure to deliver, with interest. *Id*. Assuming the Moderna shares could not be transferred until the lock-up expired, the share price at lock-up expiry affords a non-speculative, objective, and reasonable basis for computing damages under both the breach of contract and conversion claims of Dr. Warren's amended complaint.[6]

A computation of damages based on the lock-up expiry price is over-generous to the wrongdoer in this case, at least in principle. Dr. Warren was deprived of the chance to speculate with his Moderna stake that he would have enjoyed under the IDI Policy's terms. His mitigation option after being notified of Children's refusal to deliver stock of "covering" by entering the market at the IPO was unrealistic and would have entailed paying a higher price for the shares. See *Schultz v. Commodity Futures Trading Com'n*, 716 F.2d 136, 139-41 (2d Cir. 1983). Were Dr. Warren to

---

[6] The amended complaint estimates the market value of Dr. Warren's shares at lock-up expiry at $6.2M, as compared to Children's payout of $3.7M. Appendix, 451 at ¶ 49, ¶ 51. For the record, this estimate was calculated based on IDI's possession of 472,966 common units of Moderna LLC, as per its equity certificate of October 7, 2013 (Appendix, 316), the 1:9.9935 common units to common stock conversion at Moderna's 2016 Reorganization and 1-for-2.18 pre-IPO reverse split of common stock documented in its December 4, 2018 S-1/A SEC filing, an uncontested 10% taken "off the top" by agreement with the Harvard Stem Cell Institute in return for funding support of the mRNA work, Dr. Warren's IDI Policy-prescribed inventor's share of one-half of one-third of equity received by the Institute, and the NASDAQ MRNA opening price of $19.20 on June 5, 2019, the lock-up release date.

claim replevin of his shares, or even just those whose value is still being denied him as a consequence of his percentage haircut, Children's liability could be significantly higher than under the lock-up expiry calculation because of the tremendous increases in Moderna share prices that occurred as a result of its COVID-19 vaccine sales.[7]

Children's brief also conjures a scenario where, to minimize liability due to not turning over stock as directed by the IDI Policy, it might change litigation tactics and offer a new theory of the case under which stock might have been transferred to Dr. Warren at an early time point. Response Br., 38. Presumably, this would be premised on the idea of an ad hoc arrangement with Moderna or its IPO underwriters.

Even if Children's can show that it could have distributed shares early after all, Dr. Warren would still not have been able to sell them until the lock-up ended, which makes a strong prima facie case that the lock-up expiry price is the appropriate basis for calculating damages. Perhaps Children's is intimating that it could bring in experts to "model" the fair market value of completely illiquid early-stage startup company stock to support a trial position attributing a low value to Dr. Warren's equity to minimize its liability. This flies in the face of the precept that an award of damages

---

[7] The elements of replevin are satisfied under Massachusetts law where: (1) the goods in question have a value greater than twenty dollars; (2) the goods are unlawfully taken or detained; and (3) the owner or person entitled to possession is deprived of the goods. Mass. Gen. Laws ch. 247, § 7.

should seek to put the injured party in the position they would have been in if the offending party had not breached. Restatement (Second) of Contracts § 347(a) (1981). Such a theory of damages would also be unjust and should therefore be precluded because Dr. Warren could never have had any intent to voluntarily liquidate his Moderna stock before an IPO as it would have been impossible for him to do so.

In light of these considerations, Children's floating of a trial argument premised on a possible early delivery of the shares should be discounted by the Court. It is simply another ploy to distract from the real issues at hand and draw out the litigation in hopes of avoiding a judgment on the merits of the case.

**3. Dr. Warren's amended complaint does not impose a prejudicial burden by necessitating a revamp of trial tactics or the reopening of discovery.**

Regarding Children's claim that the prayer for damages is prejudicial as it could dictate a revamping of trial strategy and motivate bringing in experts to develop a new theory that stock could have been transferred early to minimize damages, the arguments above on the appropriate basis to compute damages would still stand, so a revamp would be pointless. There is no foundation outside of speculation for the proposition that bringing in experts at this stage could undermine the reasonable and customary damages computation entailed by Dr. Warren's amended complaint.

The Hospital also suggests that allowing Dr. Warren's motion to amend would be prejudicial as it would require the reopening of discovery. Dr. Warren responds

that the Hospital already had the opportunity to argue its case for discovery on Dr. Warren's finances, taxes, and investment history, agreed to limit that inquiry to the question of whether he qualified as an accredited investor in the relevant time frame (which was asked and answered in interrogatories) and that there are no new material issues requiring discovery raised by the amended complaint.

Dr. Warren's 2017 complaint (ECF 1) did raise the issue of tax treatment-related economic injury due to the loss of preferential long-term capital gains treatment on stock appreciation resulting from the failure to distribute equity. However, the amended complaint does not raise this issue.[8] Again, Children's brief suggests that Dr. Warren's prayer for damages might motivate it to revive the idea of an early transfer to minimize its liability, although the amended complaint expressly assumes transfer was only possible at the expiration of lock-up. Appendix, 453 at ¶ 66. As discussed above, there is no non-speculative basis for holding that an early-transfer theory or new discovery could change the appropriate damage computation under the proposed amended complaint.

---

[8] Dr. Warren dropped the tax-related damages issue because in the course of the litigation it emerged that: (a) it was unlikely that Moderna stock could have been transferred to him early, establishing a low tax basis and (b) it appears his Moderna distribution payments should qualify for long-term capital gains treatment under I.R.C. § 1235, despite the fact that Children's 1099-MISC forms report them as "Royalties," which are typically taxed as ordinary income.

**4. Dr. Warren's amended complaint addresses new circumstances that flowed directly from the gravamen of his original complaint.**

Dr. Warren demanded that Children's honor the IDI Policy's express terms on his percentage and right to manage his own stock by filing his original complaint (ECF 1); the Hospital refused to do so in its Answer and Counterclaim (ECF 17) and then proceeded to enact its refusal after the Moderna IPO while the case was still being litigated. The new events and circumstances cited in the amended complaint (ECF 72-1) are integral to the existing record—the Hospital did what Dr. Warren originally complained of and what it said it was going to do, i.e., abrogate IDI Policy's express terms for the sharing of royalties from the Moderna license. As a result, a court order compelling prompt distribution of the appropriate percentage of Dr. Warren's stock became moot, necessitating an alternative remedy for Children's wrongdoing, which the new prayer for damages addresses. Children's standing refusal to distribute stock, effected by its Answer and Counterclaim and its retention of Dr. Warren's stock after the shares came out of lock-up, fulfilled the legal criteria for conversion, the new tort claim in the amended complaint. Stated differently, any new matters referred to in Dr. Warren's proposed first amended complaint were already "baked in the cake" at the outset of the action.